United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH OBER GALOS, *et al.*,

    Plaintiffs,

    v.

RAND BEERS, ACTING SECRETARY, DEPARTMENT OF HOMELAND SECURITY, *et al.*,

    Defendants.
_____/

No. C-12-02902 DMR

**ORDER DENYING PLAINTIFF'S MOTION TO SUPPLEMENT AND COMPLETE THE RECORDS [DOCKET NO. 59]**

    Before the court is Plaintiffs Elizabeth Ober Galos and Rutheil Monteclaro Galos's motion to supplement and complete the records in this action challenging the Board of Immigration Appeals's denial of an immediate relative I-130 petition under the Administrative Procedure Act. [Docket No. 59.] The court finds that the matter is appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b). For the following reasons, Plaintiffs' motion is denied.

**I. BACKGROUND**

    This case follows several attempts by Plaintiffs to secure alien relative status for Plaintiff Ruthiel Galos, a citizen and national of the Philippines. (2d Am. Compl. ¶ 7.) Galos married Plaintiff Elizabeth Ober-Galos, a U.S. citizen, on July 7, 2003. (2d Am. Compl. ¶ 12.) Ober-Galos subsequently filed an I-130 petition on behalf of Galos for immediate relative classification as the spouse of a U.S. citizen. (2d Am. Compl. ¶ 12.) At his interview with immigration officials, Galos

allegedly admitted that his prior marriage to a U.S. citizen, Maria Codotco, aka Mary Quaterman, was fraudulent and entered into solely for the purpose of gaining immigration benefit, for which Galos paid Codotco $2,000.[1] (2d Am. Compl. ¶ 12.) After the interview, the USCIS denied Ober-Galos's petition pursuant to Section 204(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1154(c), (*see* 2d Am. Compl. ¶¶ 12, 23), which forecloses any possibility of receiving a change in immigration status if the current or a prior marriage was entered into for the purpose of evading immigration laws. *See* 8 U.S.C. § 1154(c).

Plaintiffs allege that Galos's admission regarding his prior marriage was coerced by an unnamed immigration official. (2d Am. Compl. ¶ 12.) According to Plaintiffs, the immigration official who conducted the interview shouted at Galos and threatened to jail him in order to force him to admit that his first marriage was fraudulent. (2d Am. Compl. ¶ 12.) Galos maintains that his marriage to Codotco was legitimate and not a sham. (2d Am. Compl. ¶¶ 12, 13, 27, 28.)

Upon its denial of Ober-Galos's I-130 petition, USCIS commenced removal proceedings against Galos, which currently are pending. (2d Am. Compl. ¶ 16.) The Board of Immigration Appeals ("BIA") upheld USCIS's decision to deny Ober-Galos's petition on appeal. (2d Am. Compl. ¶ 20.) Plaintiffs filed this lawsuit in June 2012 seeking review of BIA's denial of Ober-Galos's I-130 petition under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

Plaintiffs now move to supplement and complete the administrative record so that it includes alleged videotapes of a 1996 interview of Codotco and the 2004 interview of Plaintiffs. They also seek further evidentiary hearings so that Plaintiffs may testify regarding the alleged coercion by the immigration official who obtained Galos's admission regarding his marriage to Codotco and cross-examine Codotco. Defendant Rand Beers, Acting Secretary of the Department of Homeland Security (DHS), opposes the motion. [Docket No. 64.]

## II. Legal Standards

---

[1] Codotco and Galos were married on June 10, 1993 in the Philippines, after which Codotco returned to the U.S. (2d Am. Compl. ¶¶ 13, 14.) Galos's marriage to Codotco was annulled in the Philippines on November 29, 2001 after Galos learned that Codotco was already married. (2d Am. Compl. ¶¶ 14, 15.)

2

Under the APA, a court may "reverse the agency action only if the action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2004) (citing 5 U.S.C. § 706(2)). "An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law." *Id*. (citation omitted). In making these determinations, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation and internal quotation marks omitted) (emphasis removed). An agency's designation and certification of the administrative record is entitled to a presumption of regularity. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted). Accordingly, "its designation and certification of the administrative record is deemed sufficient to show that the record is complete." *Id.*

As a court's review of an agency decision under the APA is limited to the administrative record, discovery generally is not permitted in such cases. *Id*. at 1041. The Ninth Circuit has crafted four narrow exceptions to this rule. Courts may review extra-record material only when "(1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith." *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009) (citing *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). "[T]hese exceptions are narrowly construed and applied." *Lands Council*, 395 F.3d at 1030. Moreover, for extra-record material to be considered, a showing must first be made that the record is inadequate. *See Animal Def. Council v. Hodel,* 840 F.2d 1432, 1437 (9th Cir. 1988) ("The [plaintiff] makes no

1 showing that the district court needed to go outside the administrative record to determine whether
2 the [agency] ignored information").

### III. Discussion

4 Plaintiffs assert that the administrative record presented by Defendant is inadequate, and seek
5 to complete the record by 1) compelling Defendant to produce alleged videotapes of interviews of
6 Codotco and Plaintiffs and 2) conducting further evidentiary hearings so that Plaintiffs may testify
7 regarding Galos's alleged forced admission regarding his marriage to Codotco and cross-examine
8 Codotco. As Defendant's "designation and certification of the administrative record is deemed
9 sufficient to show that the record is complete," *see McCrary*, 495 F. Supp. 2d at 1042, Plaintiffs
10 must set forth clear evidence to the contrary under any of the four recognized exceptions set forth
11 above.

#### A.     Videotapes of Interviews

13 Plaintiffs seek "videotapes which were not part of the record, which were transcribed . . . so
14 as to know the entirety of the communication, not excerpt[s] [of them]." (Pls.' Mot. 5.)
15 Specifically, Plaintiffs seek videotapes of the 2004 interview of Plaintiffs and a 1996 interview of
16 Codotco. Plaintiffs appear to seek the production of the alleged videotapes pursuant to the exception
17 allowing discovery where the agency has relied on documents that are not part of the record.

18 With respect to the production of the videotape of Plaintiffs' 2004 interview, DHS disputes
19 the existence of any such videotape. DHS submitted evidence that Galos's USCIS file does not
20 contain a recording of the 2004 interview, nor any evidence that the interview was recorded.
21 (Nelson Decl., Dec. 6, 2013, ¶¶ 3, 6.) DHS also submitted evidence that the majority of interviews
22 conducted in the San Francisco office are not recorded. (Nelson Decl. ¶ 2.) Galos's file contains
23 one DVD marked with his identification number, but the DVD is otherwise unlabeled and undated,
24 and USCIS was unable to access and view the recording until December 5, 2013. (Nelson Decl. ¶¶
25 3, 4.) USCIS subsequently determined that the DVD contained an audio-visual recording of a 1996
26 interview. Because the DVD could not be played or copied before December 2013, it was not
27 reviewed or considered by USCIS or BIA in making their determinations regarding Ober-Galos's I-
28 130 petition. (Nelson Decl. ¶ 4, 5.) Accordingly, as there is no evidence that BIA had access to, let

1  alone relied on, a recording of Plaintiffs' 2004 interview, and there is no evidence that such a
2  recording exists, Plaintiffs' request is denied.

3  Plaintiffs also seek the production of the videotape of the 1996 interview of Codotco. The
4  administrative record includes a transcript of a videotaped interview of Codotco that took place on
5  December 20, 1996.[2] (A.R. 346-417.) Although Plaintiffs argue that they seek to know "the
6  entirety" of her interview, the record appears to contain a full transcript, not an excerpt.[3] The first
7  page is labeled "Transcription of Videotape" and the last states "Video Recording Ends, Total
8  Recording Time: 135 Minutes." (A.R. 347, 348.) Plaintiffs have not identified any other interview
9  of Codotco and do not explain why the transcript of this videotape is insufficient. Further, Plaintiffs
10 have made no showing that BIA relied on material related to any Codotco interview that is not part
11 of the record. As noted above, the record contains an audio-visual recording of a 1996 interview,
12 which the court assumes is the recording of Codotco's 1996 interview, but the video was not
13 accessible before December 2013 and so was not reviewed or considered by USCIS or BIA in
14 reviewing the I-130 petition. Accordingly, as Plaintiffs have failed to show that the record is
15 inadequate as to the Codotco interview, *see Animal Def. Council,* 840 F.2d at 1437, Plaintiffs'
16 request to augment the administrative record with a videotape of her interview is denied.

17    **B.    Further Evidentiary Hearings**
18         **1.    Additional Testimony by Plaintiffs**

19  Plaintiffs seek a further evidentiary hearing based upon the "bad faith" exception to the
20 record rule. Plaintiffs' complaint alleges bad faith on the part of the immigration officers in
21 obtaining Galos's admission that his first marriage was fraudulent, and Plaintiffs seek an evidentiary
22 hearing so that they may testify as to the officers' conduct. (Pls.' Mot. 4.) In order to invoke the
23 bad faith exception, Plaintiffs must make "a strong showing of bad faith or improper behavior" by

---

[2] Although the full name of the interviewee is blacked out, the initials "M.Q" appear throughout the transcript, and appear to correspond with the name "Mary Quaterman." (*See, e.g.*, A.R. at 394 (addressing "Ms. Quarterman" [sic]).) Further, during her interview, "M.Q." testified about her marriage to a "Rufio Galos." (*See, e.g.*, A.R. at 399, 409.) Plaintiffs do not identify any other transcribed interview of Codotco, so the court will assume this is the transcript to which Plaintiffs refer.

[3] Although the last two pages of the transcript appear out of order, (*see* A.R. 346-47), the transcript appears otherwise complete.

//

//

the agency. *See Animal Defense Council*, 840 F.2d at 1437 (citing *Public Power Council v. Johnson*, 674 F.2d 791, 795 (9th Cir. 1982)).

Plaintiffs argue that Galos's 2004 admission regarding his first marriage was "a product of a wrongful act" of the immigration officers and that through their additional testimony, they can show the officers' bad faith, citing *Portland Audubon Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993). (Pls.' Mot. 3-4.) In *Portland Audubon Society*, environmental groups challenged a decision by the Endangered Species Committee to grant an exemption from the requirements of the Endangered Species Act to the Bureau of Land Management for timber sales in Oregon. *Id*. at 1536. The plaintiffs sought leave to conduct discovery into allegedly improper *ex parte* communications between committee members and the White House in which the White House allegedly had pressured individual members into voting for the exemption. *Id*. Concluding that the President and the White House are subject to the APA's general prohibition of *ex parte* contacts, the Ninth Circuit remanded the matter to the committee for an evidentiary hearing to determine whether such communications had occurred. *Id*. at 1547-49. The court held that if there had been *ex parte* contacts, the record must be supplemented to include the communications "so that proper judicial review may be conducted." *Id*. at 1549. As the Ninth Circuit noted, "[i]f the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Id*. at 1548.

*Portland Audubon Society* does not support Plaintiffs' position. There, the party seeking review under the APA made allegations of impropriety – unlawful political pressure – that were not reflected in the administrative record. In ordering an evidentiary hearing, the Ninth Circuit noted that "where the so-called 'record' looks complete on its face and appears to support the decision of the agency but there is a *subsequent showing* of impropriety in the process, that impropriety creates an appearance of irregularity which the agency must then show to be harmless." *Id*. at 1548 (emphasis added). Here, the administrative record already reflects Plaintiffs' allegations regarding the immigration officers' alleged bad faith as well as evidence they submitted to support their

6

//

//

allegations. The administrative record contains both Galos and Ober-Galos's affidavits disavowing Galos's 2004 admission and describing the coercive nature of the interview. (*See* A.R. 138-139 (Galos's Jul. 7, 2004 affidavit); 140-141 (Ober-Galos's Oct. 11, 2005 affidavit).) The record also contains the transcript of Galos's May 22, 2008 removal hearing before an immigration judge, (A.R. 70-125), during which Galos and Ober-Galos each testified about the immigration officers' alleged coercion, and Galos testified about the authenticity of his first marriage. (*See* A.R. 81-91, 94-96, 98-110 (Galos's testimony); 115-117 (Ober-Galos's testimony).) Plaintiffs do not offer any new or additional information supporting their allegations of bad faith or otherwise explain how additional testimony on their part will supplement the record. Accordingly, Plaintiffs have not shown that the record is incomplete. Their request to offer further testimony at an evidentiary hearing is denied.

### 2. Cross Examination of Codotco

Finally, Plaintiffs also seek to cross-examine Codotco regarding contradictory statements she made about her marriage to Galos. (Pls.' Mot. 6.) Although Plaintiffs do not specify when Codotco made these statements, they appear to refer to the transcript of her 1996 interview by USCIS. (*See* A.R. 346-417.) Plaintiffs do not argue that any of the four exceptions to the record rule apply to permit such an evidentiary hearing, but instead argue that the denial of Ober-Galos's I-130 petition violated Plaintiffs' due process rights because they were not afforded the opportunity to cross examine Codotco, citing *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013).

In *Ching*, Teresita Ching, a citizen of the Philippines and her husband, a U.S. citizen, claimed that USCIS violated their procedural due process rights and rights under the APA during its adjudication of the husband's I-130 petition. *Id*. at 1153. In denying the petition, USCIS relied on a brief statement by Ching's prior husband alleging that their marriage was fraudulent. *Id*. In response, Plaintiffs submitted a "three-page, single-spaced, 21-paragraph sworn declaration from Ching describing in excruciating detail her intimate relationship" with her ex-husband, but BIA upheld USCIS's denial on the grounds that Plaintiffs' evidence had not overcome the ex-husband's affidavit. *Id*. at 1153-54. Plaintiffs filed suit alleging "USCIS acted arbitrarily and capriciously in

//

//

violation of the APA and Due Process Clause of the U.S. Constitution by denying [the husband's] I-130 petition without affording them the opportunity to cross-examine [the ex-husband] regarding his statement." *Id*. at 1154. The district court granted summary judgment for the government and the Ninth Circuit reversed, holding that the plaintiffs had a protected interest in the I-130 petition and that the interest was entitled to due process protections. *Id*. at 1156. Where it was "not possible to determine that [the ex-husband's] statement [was] true and that Ching's [was] false solely by reading them," and where Ching had presented "substantial" and "uncontested documentary evidence to corroborate her claim that the marriage was bona fide," due process required a hearing at which Ching had an opportunity to cross examine her ex-husband. *Id*. at 1159.

*Ching* does not support Plaintiffs' position that they are entitled to cross examine Codotco in these proceedings. First, Plaintiffs' request arises in the context of their motion for discovery, but *Ching* does not address when a party is entitled to discovery in an APA case. More importantly, unlike in *Ching*, the only statement USCIS and BIA relied on in denying Ober-Galos's I-130 petition was Galos's own admission that his first marriage was fraudulent, not a statement by Codotco. BIA's 2011 decision states that in affirming USCIS's denial, it considered Galos's 2004 sworn admission; Plaintiffs' subsequent affidavits disavowing the 2004 admission; and letters from Codotco to Galos describing her efforts to file visa papers on Galos's behalf, which BIA found contradicted Galos's statements that he was unaware of Codotco's petition (and which Plaintiffs do not challenge in this motion). (A.R. 3-4.) Each of these documents are contained in the record. Other than Codotco's letters to Galos, there is no indication in the record that USCIS or BIA relied on any other statements by her in denying the I-130 petition. As Plaintiffs have failed to show that the record is incomplete as to Codotco's statements, and have made no showing that any other exception to the record rule applies, their request for an evidentiary hearing at which they may cross examine Codotco is denied.

### IV. Conclusion

8

1  For the foregoing reasons, Plaintiffs' motion to supplement and complete the records is
2  denied.

4  IT IS SO ORDERED.

6  Dated: March 6, 2014



DONNA M. RYU
United States Magistrate Judge

9